*Law Offices of Isaac Nutovic*
*Proposed counsel to Debtor and Debtor in Possession*
*261 Madison Avenue, 26th Floor*
*New York, N. Y. 10016*
*(917) 922-7963*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                                  Chapter 11

                154 LENOX LLC,                                   Case No. 22-40736 ()

                                Debtor.
-----------------------------------------------------------------x

## LOCAL RULE 1007-4 DECLARATION

**Ephraim Diamond**, declaring under penalty of perjury, pursuant to 28 U.S.C. §1746, says:

1. I am the Chief Restructuring Officer of 154 Lenox, LLC (the "Debtor"), the above-named debtor and make this statement based on the Debtor's records available to me.

2. I submit this declaration pursuant to E.D.N.Y. Local Rule 1007-4, and in support of the Debtor's voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"), filed on April 8, 2022 (the "Filing Date").

### Background and Reasons for Filing

3. The Debtor is a limited liability corporation located at 154 Lenox Road, Brooklyn, New York . It is not a small business within the meaning of section 101(51D) of the Bankruptcy Code.

4. The Debtor owns a development site on 154 Lenox Road in Brooklyn (the "Property").

5. The Debtor is one of many failed real estate projects run by Boaz Gilad

1

("Gilad") and funded by Israeli public bondholders and private investors. The projects were structured such that Brookland Upreal Limited ("Brookland"), a British Virgin Islands company, owned several subsidiary holding companies (the "Holding Companies"), which in turn owned equity interests in project-level limited liability companies (the "Project Companies"). The Debtor was one of the Project Companies. The Project Companies were structured as investments wherein outside investors became members in the Project Companies alongside the Holding Companies.

6. To raise funds, Brookland issued publicly traded bonds on the Tel Aviv Stock Exchange. Following a default on its bonds, Brookland's bondholders commenced an insolvency proceeding commenced in Israel, removing Gilad as an officer and manager of the projects. The Israeli Court appointed both a Functionary to oversee the insolvency process and Ronel Ben Dov as the Chief Restructuring Officer for Brookland. I was appointed Brookland's Associate Restructuring Officer and General Counsel. Following resolution of a significant amount of inter-party claims, Brookland filed a plan of reorganization with the Israeli Court (a "Hesder"). As part of the Hesder, Guy Gissin was appointed Claims Trustee on behalf of Brookland's creditors and its settling equity partners. The Claims Trustee has the authority to bring claims on behalf Brookland's creditors and settling equity investors.

7. At the time Gilad was removed as an officer and manager, very little, if any construction work appears to have done; no work on the Property has been done since.

**Assets and Liabilities**

8. <u>Assets</u>. The Debtor's main asset is the Property which is encumbered by two mortgages and is a non-income producing construction site. One mortgage is a purchase money mortgage; the second is a partially funded construction mortgage. After Gilad relinquished

control, the Debtor attempted to sell the Property. Its efforts were initially blocked by conflicts among the creditor/investor groups. After these were resolved, the pandemic struck, freezing commercial activity. The accumulating interest on the mortgages eventually eroded all equity in the Property. Based on prior efforts to sell the Property and a review of one recent vacant land sale near the Property, the Debtor believes that the mortgages on the property, totaling at least $6.4 million, exceeds its value by more than $1 million.

9. In addition to the Property, the Debtor has two claims which it has elected not to pursue. First, potential claims against Gilad. Second, an intercompany receivable against one of its parent companies, New Upreal LLC. After investigation, the Debtor has determined that the costs of formulating and pursuing the claims outweigh any likely recovery. First, Gilad himself filed for personal bankruptcy, scheduling in excess of $150,000,000 and less than $10,000 in assets. Similarly, the intercompany claim against New Upreal LLC, has no real recovery value given the extensive investor claims asserted against that entity.

10. <u>Liabilities</u>. The Debtor's mortgagee obtained a judgment of foreclosure in January 28,2022 in the amount of $5,082,97o plus interest and fees.

11. Following complex multi-party litigation commenced in the New York Supreme Court of the State of New York, County of Kings under index number 522522/2019, the Brookland's bondholders, the Claims Trustee, the equity investors of the Debtor and a third party claimant of the Debtor settled their differences, whereby, the parties agreed that that in exchange for an allowed judgment claim against the Debtor in the amount of $4,974,302.61 (the parties would contribute their claim to the Claims Trust for the benefit of all of Brookland's creditors. The judgment in favor of Guy Gissin Claims trustee was stipulated to on February 8, 2021.

12. The only other significant claimant is Environmental Bulkheading Corp. which

asserted a mechanics lien (now expired) for $396,019. The Debtor's records available to me do not reflect any debt to that entity.

13. Other debt, which will be scheduled as undisputed, is approximately $57,000.

14. <u>Exit Strategy</u>. Recently, Tideway Cap Funding LLC ("<u>Tideway</u>") took an assignment of the outstanding mortgages on the Property after the mortgagee had obtained a judgment of foreclosure on January 28, 2022 in the New York Supreme Court of the State of New York, County of Kings under index number 508317/2019. Subsequently, Tideway, the Debtor and Guy Gissin, Claims Trustee, the Debtor's largest creditor, entered into an agreement, pursuant to which Tideway would fund a plan of reorganization, capping administrative expenses (including U.S. trustee fees) at $30,000 and leave $150,000 available to pay unsecured creditors. The funding is conditioned on the Plan being consummated by June 1, 2022. Tideway is motivated in this agreement by the expiration of NY RPTL section 421-a tax incentives in June. In connection with the agreement the Debtor has licensed Townhouse Builders Inc. to take such action on behalf of the Debtor as is necessary to take advantage of the tax abatement program.

**Miscellaneous**

15. No property of the Debtor is in the possession or custody and control of any public officer, receiver, trustee or assignee for the benefit of creditors, mortgagees, pledgees or assignees.

16. There is no current pending litigation against the Debtor.

17. No prepetition committee was formed by creditors of the Debtor.

18. A list of the 20 largest creditors is annexed as Exhibit A.

19. The Debtor's equity is not publicly held.

20. The Debtor does not have any payroll obligations.

April 11, 2022

_____
Ephraim Diamond,
Chief Restructuring Officer

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor name ___154 Lenox LLC_____

United States Bankruptcy Court for the: __EASTERN_____ District of __NY____
(State)

Case number (If known): __22-40736_____

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders          12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | GUY GUSSIN, CLAIMS TRUSTEE C/O JARED PAIOFF Schwartz Sladkus Reich Greenberg & Atlas LLP 444 MADISON AVENUE, NEW YORK, NY10022 | | JUDGMENT | | | | 6,412,244 |
| 2 | | | | | | | |
| 3 | Environmental Bulkheading Corp 50 DAVISON LANE EAST WEST ISLIP NY 11759 | | CONTRACT | DISPUTED | | | 366,019 |
| 4 | Brooklyn Upreal A2 LLC c/o Efrem Schwalb Koffsky Schwalb LLC 500 Seventh Avenue, 8th Floor New York, NY 10018 | | SUBROGATION; ADVANCE | | | | 56,250 |
| 5 | NYC Office of Administrative Trials and Hearings 66 John Street, 10th Floor New York NY 10038 | | VIOLATIONS | | | | 70,000 EST |
| 6 | American Arbitration Association 1301 Atwood Avenue, Suite 211N Johnston, R.I. 02919 Attn: Julie M. Molloy | | SERVICES | UNLIQ. | | | 106.25 |
| 7 | | | | | | | |
| 8 | | | | | | | |